UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HERSHEL O. McCALEB, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos: 3:06-cr-139 |
| | ) | 3:10-cv-103 |
| UNITED STATES OF AMERICA, | ) | (VARLAN/GUYTON) |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Hershel O. McCaleb ("petitioner"). The government has filed its response to the motion and petitioner has filed his reply. For the following reasons, the § 2255 motion to vacate will be **DENIED** and this action will be **DISMISSED**.

**I.     Standard of Review**

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II.     Factual Background

Petitioner was convicted by a jury of felon in possession of a firearm and ammunition (count one) and felon in possession of ammunition (count two), in violation of 18 U.S.C. § 922(g)(1). Pursuant to 18 U.S.C. § 924(e), he was sentenced as an armed career criminal to concurrent terms of imprisonment of 320 months. [Criminal Action No. 3:06-cr-139, Court File No. 63, Judgment]. Petitioner appealed, arguing, among other things, that the evidence was not sufficient to support the convictions. The Sixth Circuit disagreed and affirmed the convictions, finding that "the prosecution's direct, circumstantial, and forensic evidence was adequate to support the verdict." *United States v. McCaleb*, 302 F. App'x 410, 411 (6th Cir. Dec. 4, 2008). In doing so, the Sixth Circuit summarized the evidence against petitioner as follows:

> On October 17, 2006, officer Mike Riddle of the Knoxville Police Department was patrolling near the Austin Homes housing project. Shortly after noon, Officer Riddle heard numerous gunshots coming from inside the housing complex. He immediately proceeded to the scene.
>
> Eyewitnesses to the shooting, including the victim Akeem McDowell and his twelve-year-old cousin Thomas Boatwright, testified that McCaleb and

McDowell were involved in a brief physical altercation shortly before the shooting. McDowell testified that McCaleb left the scene of the altercation, walked to his mother's home, and reemerged shortly thereafter. Several minutes later, McDowell heard shots, looked up, and realized McCaleb was shooting at him. McDowell testified that he saw a shot hit the ground in front of him and heard shots whizzing by him. He later found a bullet hole in his pants, which were introduced at trial. Boatwright also testified that he saw McCaleb shoot at McDowell.

When Officer Riddle arrived on the scene of the shooting, he saw a black male wearing a blue ball cap, blue sweat pants, and a shirt that was either dark blue or black. As soon as the man saw Officer Riddle in his marked police car, the man fled the scene. Officer Riddle pursued the suspect in his car, notifying the dispatcher of his pursuit. At one point, Officer Riddle lost sight of the suspect, but continued to the group of buildings between which the suspect had fled. When Officer Riddle turned into the parking lot, he saw the back door of apartment 322 swing shut. Officer Riddle checked hiding places in the immediate vicinity and determined that if the suspect had continued to flee he would either be in Officer Riddle's line of sight or would encounter other officers who were now closing in on the area. Officer Riddle then approached the back door of apartment 322. While securing the back door, he could not see the front door. Several other officers arrived shortly thereafter, at which point Officer Riddle knocked loudly on the back door and announced his presence.

The officers found four people in the apartment—the occupant of the apartment Marland Cates, Cates's cousin, Cates's six-year-old child, and McCaleb. Both Cates and his cousin were over six feet tall and weighed over 300 pounds. McCaleb, by contrast, is 5' 10" and weighs 185 pounds. Only McCaleb resembled the suspect whom Officer Riddle pursued into the apartment. Cates testified that shortly after the shooting and just before the officers gained admittance to the apartment, he heard the back door slam and then the door of one of the upstairs bedrooms slam. He thought it was his twelve-year-old son, whom Cates had called to come inside when he heard the shots. Cates testified that he did not know McCaleb was in his home.

When the officers first encountered McCaleb, he was standing at the top of the staircase wearing only boxers. Upon searching the apartment, the officers found a weapon in the upstairs closet and a pair of wet, crumpled blue sweat pants lying as if quickly discarded in a nearby bedroom. It was a rainy day, so the clothes of the fleeing suspect would have been damp. During the

3

ensuing encounter, McCaleb told the officers that he had been in the apartment all night with his girlfriend. He testified at trial, however, that he came to Austin Homes right around the time of the shooting to visit his mother and to attend a Bible study.

The color of McCaleb's pants turned out to be an important issue at trial. Officer Riddle testified that, during the course of the arrest, McCaleb asked to put his pants back on and identified them as being the blue ones. McCaleb, on the other hand, attempted to establish that he wore gray pants while another person, never found by the police, wore blue pants. McCaleb gave the following explanation of how he came to be in Cates's apartment uninvited and how the true culprit allegedly evaded capture. McCaleb testified that when he arrived at the Austin Homes complex, he encountered a man named "Meet to Meet" fleeing from the police. Meet to Meet was dressed according to Officer Riddle's description of the suspect, while McCaleb was not. Because McCaleb was banned from Austin Homes and subject to arrest if found there, he fled with Meet to Meet into Cates's home. McCaleb said he stayed near the back door and briefly lost sight of Meet to Meet. Shortly thereafter, Meet to Meet left through the front door, while McCaleb remained in the apartment. A few moments later, the police arrived. The defense's case relied on McCaleb's testimony that he wore gray sweat pants on the day of the arrest, and on an intake form from the county jail that listed gray sweat pants among McCaleb's belongings. The district judge allowed the prosecution, in its rebuttal case, to introduce a police videotape showing McCaleb wearing blue sweat pants while being placed in the police car.

A crime lab unit recovered a .380 Cobra semi-automatic pistol and a magazine fully loaded with FC ammunition from the upstairs closet of Cates's apartment. In addition, the unit recovered five spent FC .380 shell casings from the shooting site. Forensic testing on the weapon and spent casings led the state's firearms identification specialist to determine with 100 percent certainty that the bullets found at the shooting scene were fired from the gun recovered from Cates's apartment.

*Id.* at 412-13. Based upon the foregoing, the Sixth Circuit concluded the evidence was sufficient to convict petitioner.

When viewed in the light most favorable to the prosecution and resolving all issues of credibility in favor of the jury's verdict, the evidence presented at trial was sufficient to support the verdict. The prosecution

4

> presented evidence that placed McCaleb in the street of the Austin Homes housing project discharging a gun, placed him in Cates's apartment near a Cobra .380 semiautomatic pistol shortly thereafter, and linked the Cobra pistol to the shooting. The deferential standard of review applied to jury verdicts does not require more.

*Id*. at 413. In support of his § 2255 motion, petitioner alleges numerous instances of ineffective assistance of counsel.

## III. Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

As noted, petitioner has alleged numerous instances of ineffective assistance, before trial, during trial, and on direct appeal. The Court will consider each of these in turn.

### A. Failure to move for dismissal under the Speedy Trial Act.

Petitioner alleges that counsel should have moved to dismiss the case based upon the violation of petitioner's statutory right to a speedy trial. Under the Speedy Trial Act, a defendant's trial must commence within seventy days after the date on which the indictment was filed or the date the defendant appeared before a judicial officer of the Court in which the charge is pending, whichever is later. 18 U.S.C. § 3161(c)(1). Periods of delay may be excluded from the seventy-day calculation for various reasons, including periods stemming from a continuance (provided that the Court makes a finding that the "ends of justice" served by granting a continuance outweighs the best interest of the public and the defendant in a speedy trial), 18 U.S.C. § 3161(h)(7)(A), and periods during which pretrial motions are under advisement by the Court, *id*. § 3161(h)(1)(D). If a defendant is not brought to trial within seventy non-excludable days, the "indictment shall be dismissed on motion of the defendant."

18 U.S.C. § 3162(a)(2). This dismissal may be either with or without prejudice depending on the Court's consideration of three non-exclusive factors: "[1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." *Id.*

Petitioner was indicted on October 17, 2006, and was arraigned the following day, with trial being scheduled for December 19, 2006. [Criminal Action No. 3:06-cr-139, Doc. 1, Indictment, and Doc. 2, Minutes]. On November 29, 2006, petitioner filed six pretrial motions [Docs. 13-18] and a hearing on the motions was set for December 11, 2006, before the magistrate judge [Doc. 20, Minutes]. At that hearing, counsel for petitioner asked to delay the hearing on the motions and to continue the trial. [*Id.*]. The court granted the motion for continuance, citing the "ends of justice," and trial was rescheduled for April 9, 2007. [Doc. 21, Memorandum and Order].

On January 4, 2007, the magistrate judge denied petitioner's pretrial motions. [Doc. 23, Memorandum and Order]. Petitioner appealed to the district court. [Doc. 24, Appeal]. He also filed four additional pretrial motions in limine. [Docs. 25-28]. On March 29, 2007, this Court overruled the appeal of the magistrate judge's denial of the original six pretrial motions. [Doc. 33, Memorandum and Order]. During the final pretrial conference on April 2, 2007, the parties jointly asked to delay the trial by one day. [Doc. 35, Minutes]. The magistrate judge agreed and issued an "ends of justice" scheduling order re-setting the case for trial on April 10, 2007; the magistrate judge also deferred the remaining four motions in

limine to the district court for its consideration. [Doc. 34, Memorandum and Order]. Petitioner went to trial on April 10, 2007, and was convicted. [Doc. 37, Minutes].

Petitioner's pretrial motions tolled the speedy trial clock and, with respect to the continuance of the trial dates, the magistrate judge specifically found that the ends of justice served by the continuances outweighed the interests of the public and the petitioner in a speedy trial. Based upon the foregoing, there was no violation of the Speedy Trial Act, and counsel was not ineffective in failing to dismiss based upon a violation of the Act. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

    **B.**    **Failure to argue that the government witnesses had been directed to not speak with defense counsel.**

Petitioner alleges that counsel should have argued and presented evidence to show that the police officers involved in the case had directed the government witnesses to not speak with members of the defense. Counsel in fact filed a motion for access to witnesses, in which he alleged that action by the government had "restricted the defense team's access to certain witnesses." [Doc. 17, Motion, p. 1]. Counsel specifically claimed that he had been "informed by important witnesses to the case that they had been instructed by a Knoxville Police Department officer, an agent of the government, not to speak with members of the defense team." [*Id.*].

The motion for access was denied by the magistrate judge [Doc. 23, Memorandum and Order, pp. 6-7] and this Court overruled the appeal of that decision [Doc. 33, Memorandum and Order, pp. 4-5]. Petitioner has failed to state a claim of ineffective assistance of counsel in this regard.

### C. Failure to negotiate a plea agreement which excluded the § 924(e) enhancement.

Petitioner alleges that had counsel negotiated a plea agreement which avoided the enhancement as an armed career criminal he would have pleaded guilty. According to petitioner, there is a reasonable probability that the government would have accepted such an agreement in lieu of going to trial. There is nothing in the record to support the claim that the government would have accepted such a plea agreement. In fact, it is highly unlikely the government would have done so, given petitioner's extensive criminal history and the plain language of § 924(e) which mandates a minimum sentence of 15 years for an armed career criminal. This claim of ineffective assistance of counsel lacks merit.

### D. Failure to advise petitioner of the risks of proceeding to trial as opposed to accepting the proposed plea agreement.

Petitioner alleges that he would have accepted the proposed plea agreement or entered a guilty plea to the indictment had he been advised of the risks of going to trial. He specifically claims that his counsel failed to explain that his sentence could be enhanced for testifying, that counsel failed to explain the two or three level reduction for acceptance of responsibility, and failed to explain that petitioner was facing a sentence of 320 months.

9

According to petitioner, counsel assured him that his sentence would be 180 months whether he went to trial or pleaded guilty.

In order to satisfy the prejudice requirement of *Strickland*, in a case where a petitioner claims that his attorney was ineffective in counseling the petitioner to reject a plea agreement and go to trial, petitioner must demonstrate that absent counsel's error he would have pleaded guilty. *See Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005). "A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty." *Id*. at 859 (citation omitted).

Petitioner maintained his innocence at trial [Doc. 51, Transcript of Testimony, pp. 212-213, 226-228] and at sentencing [Doc. 77, Transcript of Proceedings, pp. 4, 10]. During his allocution, petitioner reiterated his innocence:

> Let me state for the record, I'm innocent. These false allegations that were brought against me were never proved. The evidence don't support this malicious conviction. I never possessed or had possession of a .380 gun on me. The gun was never found on me. I did not have knowledge of a .380 gun.
>
> My fingerprints was never on the .380, magazine, shell casing or the seven bullets that was in the magazine. The expert witness for the Government, Ms. Resig, testified to that. Mr. Cates, Tuvya Green, Officer Riddle, Akeem McDowell, Thomas Boatwright, Russ Whitfield, never put that gun in my hand, and these are the Government witnesses. Nothing physical linked that .380 to me.
>
> ...

>	I did not have a fair trial. My Fourteenth and Sixteenth Amendment rights was violated. Your Honor, I ask you, would you please dismiss this verdict and give me a new trial, dismiss these charges and give me some relief. I did not have a fair trial. The evidence don't support the verdict. The .380 is not my gun.
>
>	...
>
>	I object to this sentencing, I object to this verdict. I'm innocent....

[*Id*. at 19-21].

Given petitioner's strenuous assertions of his innocence, it is difficult to believe that he would have pleaded guilty under any circumstances. In addition, it is important to remember that "there is a significant difference between the consequences emanating from a decision to reject a plea agreement and not plead guilty and the decision to enter a guilty plea." *Johnson v. Duckworth*, 793 F.2d 898, 901 (7th Cir. 1986). "The rejection of a plea agreement, in most instances, will result in the defendant going to trial with all of the concomitant constitutional safeguards that are part and parcel of our judicial process." *Id*. at 900.

To the extent petitioner claims his attorney failed to explain that his sentence could be enhanced for testifying, petitioner was not penalized for testifying, but rather received a two-level enhancement for obstruction of justice for testifying falsely. To the extent petitioner alleges his attorney told him he would receive the same sentence whether he pleaded guilty or went to trial, there is nothing in the record to support such a claim other than petitioner's self-serving statement. Petitioner has failed to state a claim for ineffective assistance in this regard.

11

### E. Failure to advise petitioner of the risks of testifying.

Petitioner alleges that counsel failed to explain that testifying could subject him to an enhancement for obstruction of justice if convicted, and failed to inform petitioner that the decision whether to testify was his alone. According to petitioner, counsel simply informed him that he would be called to testify.

As noted, petitioner was not penalized for testifying, but rather for testifying falsely. In addition, there is nothing in the record to support petitioner's allegation that counsel failed to inform him that the decision whether to testify was his other than petitioner's self-serving statement. This claim of ineffective assistance of counsel lacks merit.

### F. Failure to request limiting instruction on 404(b) evidence.

Petitioner alleges that counsel failed to request a limiting instruction on the admissibility of evidence under Rule 404(b) of the Federal Rules of Evidence. This claim refers to the fact that the Court allowed testimony regarding petitioner's drug dealing, which was affirmed on direct appeal.

> The district court's decision to admit evidence of McCaleb's other bad acts under Federal Rule of Evidence 404(b) was not an abuse of discretion. The district court's decision to admit evidence of drug dealing in this case met each of the three requirements for admitting evidence of prior bad acts. "First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred. Second, the district court must make a determination as to whether the 'other act' is admissible for a proper purpose under Rule 404(b). Third, the district court must determine whether the 'other acts' evidence is more prejudicial than probative under Rule 403."

*United States v. McCaleb*, 302 F. App'x 410, 414 (quoting *United States v. Mack*, 258 F.3d 548, 553 (6th Cir.2001)).

In finding no abuse of discretion, the Sixth Circuit noted that "[w]here the district court admits evidence under Rule 404(b), the court must provide a limiting instruction to the jury if such an instruction is requested." *Id*. at 415 (citation omitted). The Court then observed that "[t]he record is this case does not indicate that McCaleb requested a limiting instruction, and McCaleb does not raise this issue on appeal." *Id*.

While petitioner claims that his attorney should have requested a limiting instruction, he has not demonstrated how such an instruction would have affected the outcome of the trial, especially given the overwhelming evidence against petitioner. Accordingly, this claim of ineffective assistance of counsel lacks merit.

### G. Failure to cross-examine the government's witnesses.

Petitioner alleges that counsel failed to cross-examine the government's witnesses as to governmental misconduct, specifically instructing the witnesses to not talk to the defense. Petitioner has failed to demonstrate, however, how such a cross-examination would have been of benefit and this claim lacks merit.

### H. Failure to move for a mistrial.

Petitioner alleges that counsel should have moved for a mistrial based upon the government's improper vouching for its witnesses and its improper characterization of the evidence. There is nothing in the record to support this claim and it lacks merit.

13

**I.  Failure to argue at sentencing and on appeal that petitioner did not qualify as a career offender in light of Amendment 709.**

Petitioner was sentenced by judgment entered September 20, 2007. The Sixth Circuit has held that Amendment 709 to the sentencing guidelines, which took effect November 1, 2007, and which altered the manner of determining whether a defendant qualifies as a career offender, does not apply retroactively. *United States v. Horn*, 679 F.3d 397 (6th Cir. 2012). Amendment 709 thus affords petitioner no relief. Likewise, counsel was not ineffective based upon his failure to raise the issue on appeal. *See Mathews v. United States*, 11 F.3d 583, 585 (6th Cir. 1993) (an attorney is not required to raise meritless issues on appeal).

**J.  Failure to raise on appeal the following: erroneous jury instructions, the denial of pretrial motions for discovery, the government's improper vouching for witnesses and characterization of the evidence, and the violation of petitioner's right to a speedy trial.**

As previously noted, there is nothing in the record to support the claims that petitioner's right to a speedy trial was violated, or that the government improperly vouched for witnesses or mis-characterized the evidence, and thus there was no reason for counsel to have raised those issues on appeal. Petitioner does not state what the basis would have been for a challenge to the jury instructions, nor does he develop the factual basis for an appeal regarding the denial of pretrial motions. In any event, appellate counsel's decision as to what issues should be raised on appeal cannot generally constitute ineffective assistance of counsel. *See, e.g. McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000) ("Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation."); *Wright v. United States*, 182 F.3d

458, 466 (6th Cir. 1999) ("Appellate counsel is not ineffective simply because he or she decides not to raise every possible argument on appeal."). "A brief that raises every colorable issue runs the risk of burying good arguments." *Jones v. Barnes*, 463 U.S. at 753. Accordingly, petitioner has failed to demonstrate ineffective assistance of appellate counsel.

Based upon the foregoing, petitioner has failed to demonstrate that he received ineffective assistance of counsel under the standard set forth in *Strickland*.

## IV. Conclusion

Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed in forma pauperis on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE