UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:06-CR-139-TAV-JEM-1 |
| HERSHEL O. MCCALEB, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's pro se motion for compassionate release [Doc. 90] and counseled supplement thereto [Doc. 101]. The government has responded in opposition [Doc. 105]. For the reasons set forth more fully below, defendant's request for compassionate release [Docs. 90, 101] is **DENIED**. Defendant's motion requesting a ruling on his compassionate release request [Doc. 107] is **DENIED** as moot.

**I.  Background**

Defendant was indicted in 2006 on one count of being a felon in possession of a firearm and ammunition, and one count of being a felon in possession of ammunition, both in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) [Doc. 1]. In April 2007, defendant proceeded to trial and was found guilty on both counts of the indictment [Doc. 42]. The Court sentenced defendant to 320 months' imprisonment as to each count, to run concurrently, to be followed by 5 years' supervised release [Doc. 63]. Defendant appealed his convictions [Doc. 64], and the Sixth Circuit affirmed [Doc. 66].

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons ("BOP"). Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant seeks relief under § 3582(c)(1)(A)(i) [Docs. 90, 101].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

### III. Analysis

#### A. Exhaustion

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct.
3

13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

In this case, the government does not address the exhaustion requirement in its response [Doc. 105]. However, it appears that defendant has exhausted his administrative remedies in this case [*See* Doc. 90, p. 8]. Accordingly, the Court will proceed with the next step of the compassionate release analysis.

**B.     Section 3553(a) Factors**

As noted above, the Court need not address all of the requirements of § 3582(c)(1)(A) if one is lacking. *Elias*, 984 F.3d at 519. In this instance, the § 3553(a) factors weigh against granting compassionate release, therefore, the Court declines to address whether defendant has established extraordinary and compelling grounds for release.

Section "3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). 18 U.S.C. § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence

imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. *Id.*

The Court first notes the seriousness of the offenses. Although defendant was convicted on two counts related to possession of firearms and ammunition [Doc. 63], his actual offense conduct is far more serious than simply possessing firearms and ammunition. Rather, the testimony introduced at trial indicates that defendant pointed a gun at 17-year-old Akeem McDowell, with whom he had argued earlier in the day, and fired five shots [Presentence Investigation Report ("PSR") ¶¶ 6–7, 10]. McDowell testified that he later found a bullet hole in his pants [*Id.* ¶ 7]. McDowell's 13-year-old cousin, Thomas Boatwright, witnessed the shooting [*Id.* ¶ 6]. When officers responded to hearing gunshots, defendant was seen running from the scene and defendant subsequently entered the apartment of another individual, Marland Cates, without Cates' knowledge of consent, to hide [*Id.* ¶¶ 5, 8–9]. Needless to say, defendant's actions of possessing a firearm and ammunition after conviction for a felony, using such to open fire on a minor (in the presence of a second minor), running from police, and entering another individual's home to hide from police are extremely serious and show a complete disregard for the safety of others.

The Court also takes note of defendant's significant criminal history and significant disciplinary record during incarceration. At the time of sentencing, defendant was only 35

years old, but had accumulated 19 criminal history points,[1] resulting in a criminal history category of VI [*Id.* at 2, ¶ 41]. Moreover, defendant was deemed an armed career criminal based on his prior convictions for possession of cocaine with intent to sell, aggravated assault (three convictions), and robbery (three convictions) [*Id.* ¶¶ 29–33, 41]. And the facts behind many of defendant's prior convictions are violent. In 1990, defendant assaulted a 15-year-old by striking him in the head with a large stick, resulting in his first aggravated assault conviction [*Id.* ¶ 30]. That same year, defendant physically pushed an individual while taking property from a store, resulting in his first robbery conviction [*Id.* ¶ 31]. In 1992, he sprayed two individuals in the face with mace during the course of taking property from a store, resulting in convictions for robbery and aggravated assault [*Id.* ¶ 32].

Defendant was incarcerated as a result of these convictions from 1992 to 2004 [*Id.* ¶ 37]. During this incarceration defendant received 49 disciplinary write ups, including, of particular relevance, 4 for assaulting staff, 1 for assault, 2 for indecent exposure, 3 for sexual harassment, 1 for sexual misconduct, 2 for conspiracy to violate state law, 2 for fighting, 2 for threatening an employee, 1 for threatening an offender, 2 for interfering with officer duties, 1 for strong armed robbery, and 1 for destroying state property [*Id.*]. As to some of the more serious infractions, in 1995, defendant struck another inmate and knocked him to the floor [*Id.* ¶ 38]. That same year, defendant walked up behind a female staff member and rubbed his penis against her buttocks [*Id.*]. In 1996, he used a prison-made

---

[1] The Court notes that, if recalculated under the current guidelines, defendant's total criminal history points may be slightly less.

6

Case 3:06-cr-00139-TAV-JEM   Document 108   Filed 10/25/24   Page 6 of 9   PageID #: 1234

knife to rob another inmate of several cartons of cigarettes [*Id.*]. In 1997, defendant threw liquid on staff members on several occasions [*Id.*]. In 1998, defendant made sexual comments about a staff member's wife, who also worked at the facility, threatened staff members, and exposed his pubic area to a female staff member [*Id.*]. In 2000, defendant touched a female staff member's buttocks, exposed himself to another staff member, and exposed himself while masturbating to another female staff member [*Id.*]. In 2002, defendant kicked an officer, injuring his leg [*Id.*].

And despite serving a lengthy term of incarceration, in 2005, shortly after his release, defendant grabbed a woman while she was walking to her car, began punching and clawing her in the face, grabbed her hair, and bit her, and stole property from her [*Id.* ¶ 35]. In 2006, defendant "yell[ed] and scream[ed]" at patrons and staff of a nightclub before wrestling a staff member and tearing his shirt off, resulting in a conviction for disorderly conduct [*Id.* ¶ 36]. Later in 2006, defendant committed the instant offense [*Id.* ¶¶ 5, 7].

And turning to defendant's post-sentencing disciplinary record, rather than using his period of incarcerated to turn his life around, it appears that defendant has continued to display a lack respect for authority, accruing in additional 9 disciplinary sanctions since beginning his federal incarceration, up through 2022, the last date of the records received by the Court [Doc. 105-3]. Of particular note, in 2013, defendant was sanctioned for "disruptive conduct" with a notation that this was related to "sexual assault" [Id. at 3]. In 2020, he was sanctioned for misusing authorized medication and refusing to obey an order

7

[*Id.* at 2]. Again in 2020, he was sanctioned for indecent exposure for exposing his penis to a female staff member [*Id.*].

Considering all of the § 3553(a) factors, the Court finds that, even if defendant could establish extraordinary and compelling grounds supporting his request for release, such grounds would be outweighed by the seriousness of the offense, the need to protect the public, the need to specifically deter defendant from future criminal activity, and the need to promote respect for the law. And, as recently as November 2021, three months before filing his pro se motion, defendant engaged in disruptive conduct by repeatedly pressing a duress button because he was "unhappy with his meal" and encouraging others to do the same [*Id.* at 1].

The Court acknowledges that defendant's current health somewhat mitigates the risk that he will engage in violence in the future. However, the fact that defendant is confined to a wheelchair does not prevent him from engaging in any violent conduct, such as the conduct that resulted in the instant convictions. Given the seriousness of this offense and defendant's history and characteristics, the Court finds that defendant remains a danger to the public, and, overall, the § 3553(a) factors weigh against early release.

In reaching this decision, the Court has considered the parties' filings, the PSR, the § 3553(a) factors and other relevant law, and the record as a whole. While the Court notes defendant's medical condition, that is only part of the compassionate release calculus. On the record before the Court, the § 3553(a) factors weigh against early release, and defendant's request for compassionate release will therefore be denied.

## VII. Conclusion

For the reasons set forth more fully above, defendant's request for compassionate release [Docs. 90, 101] is **DENIED**, and defendant's motion for a ruling [Doc. 107] is **DENIED** as moot.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE